STEPHEN TOUCHSTONE *et al. v.* D. J. WHITTINGTON *et al.*

1. PUBLIC OFFICERS. *Liability and duty of, in relation to trust funds.* Where an officer holding a trust fund converts it to his own use, he is liable for its value at the time of its conversion.
2. SAME. *Same.* Such liability may be discharged in the same currency as received, though depreciated or worthless, where the officer has acted in good faith. The identical bills are not necessary, if the fund has been kept intact in the *same character of security* as received, and as the property of the beneficiary. This decision is confined to Confederate money.

Cases cited: Taylor *v.* Benham, 5 How. U. S. R., 233; Davis, Com., *v.* Harman *et al.*, 21 Gratt. R., 202, 205.

FROM LINCOLN.

Appeal from the County Court. H. C. CAVAN, Judge.

E. COOPER and W. B. MARTIN for Whittington.

W. L. KERCHEVAL and J. G. CARRIGAN for Touchstone.

FREEMAN, J., delivered the opinion of the Court.

This was a proceeding in the County Court of Lincoln County against Whittington, as Clerk of said

Court, and his sureties, for moneys collected by him in his office during the war, on a note given by one Sugg for lands sold by order of Court. Ten per cent. of the amount (making $509.65) was paid in cash; note given for $1,828.96 balance. At last term of this Court the case was here, and two decrees were entered, charging Whittington conditionally with both amounts—the one entered January 17, the other on the 23d. This last must be one guide in this case.

By that decree it appears that the Court held that Whittington was bound to hand over to the administrator of Touchstone so much of said first payment as he had not properly disbursed, and as remains in *kind* in his hands, and if the same does not remain in kind in his hands, he is liable to account for its market value at the time received, and as it did not appear clearly in what currency the first note was paid, a reference was ordered to be had in County Court on this question, the Clerk being required to report upon both as to the kind of currency received and the market value at the time received. It is added: This inquiry and report will not be made, if it is made to appear that Whittington still has on hand the same currency received by him. The case was remanded to County Court for this inquiry.

The Clerk in that Court made two reports on the principle of each decree in this Court, which, by mistake, were both certified to the County Court. We

need only notice the one based on the last decree above recited. Several exceptions were filed, both by complainants and defendants. Whittington alone appeals to this Court from the action of the County Court in rendering its decree, which overrules the exceptions of both parties, but adopts the report of the Clerk and Master, made in pursuance of the last decree of this Court. As to the $509.65, the Court holds that Whittington had properly accounted for that sum, and we need not consider that item, as he does not complain of it, being in his favor.

The Court finds that he, however, has not the identical currency received by him on said first note, and construes the former decree of this Court to mean that it must be the same identical bills or notes received by him, and then ascertain the value of this money at the time received, and hold him liable for the same.

The facts as to the money in the bill are, that the Clerk received it under direction of Stephens (the attorney). In July, 1863, he deposited the money, it being Confederate notes, with the Depository of the Confederate Government in Chattanooga, taking his receipt for the same, which was to be invested in coupon bonds or registered stock of the United States, at election of Whittington, the said bonds bearing 7 per cent. interest. This deposit, however, seems to have been made of only part of the money. The balance of the amount was exchanged for what was known as the "new issue" of the Confederate States,

Stephen Touchstone *et al. v.* D. J. Whittington *et al.*

the laws of the Confederate States at the time requiring the old notes to be filed and exchanged for this new issue within a certain time fixed, or else they became worthless. Whittington says, in his evidence, that, thinking it would be best for the estate, he exchanged a portion of this new issue for six one-hundred-dollar bonds, each bearing interest at two cents per day, which bonds he files with his deposition.

The question is whether, under the decree of this Court, the Clerk is liable for this money? The County Court held he was, according to the understanding of the decree by that Court.

It will be seen that the question settled by this Court was, that the Clerk was liable for the value of the currency received, unless he still had it on hand, the true object of the decree being to hold him liable for breach of his duty as Clerk, charged with safe-keeping of a trust fund, and that of a peculiar character, under peculiar and embarassing circumstances. In many cases officers, agents, and trustees have used for their own purposes funds of this kind in their hands, and then, after the war has ended and the money utterly worthless, prepare to meet the demand of the parties entitled by tendering Confederate money of like amount. As we have held, no such thing as this can be allowed. But it was not intended by this decree to hold the party responsible, regardless of whether he had faithfully performed his duty as to the fund in hand or

Stephen Touchstone *et al. v.* D. J. Whittington *et al.*

not; in other words, *the same currency does not necessarily mean the same identical bills, but that the fund has been kept intact in the same character of security as received, and then, if no misuse of it, nor breach of trust, nor application of it to his own use has been made, the officer ought not, to be held liable. The words of the decree holding him to account for it at value at the time he disposed of it, involve the idea of disposition of, or use or sale of the fund, not the idea that an investment in new notes of the same kind, as the means of securing it, or as means presenting a prospect of securing it when it was certain to be worthless in a few months in his hands, if kept in the form it then was. "Trustees are not held responsible for a loss, unless it has been occasioned by their own wrong, or when they are in default for not having interfered to prevent it." *Taylor* v. *Benham,* 5 How. U. S. R., 233. It is clear that the Clerk, in this case, acted with perfect good faith—changed the money into Confederate obligations of greater value, and was compelled to do so under the facts then surrounding him, or see the money die on his hands. It would have been his duty to have made an effort to save the money from becoming worthless, by exchanging it for new issue, for if he had not done so, and the issue of the war had been different, the parties now seeking to hold him responsible for doing what he has done would no doubt have insisted on his liability for neglecting, as a trustee, to use the means at hand to preserve

the funds.    The case of *Davis, Com.,* v. *Harmon et al.,* 21 Gratt. R., 202, 205, is a case identical with this, and sustains the views we have expressed, and we think the principle sound, and approve it.    We confine our decision, however, distinctly to the case* of Confederate money, under the facts of this case, showing, as they do, perfect good faith, and the changing of the funds into like securities of the same character, for security and safety of the fund.    We think it can fairly be said it is the same currency, though not the same identical bills, and that this gives the true intention of the former decree of this Court.    The result is, that the decree of the County Court is affirmed as to the $509 65, and reversed as to the balance, and proceedings dismissed.

Complainant will pay costs of this Court, and that of the County Court will be paid by defendants.